UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN MILLIKEN,<br><br>          Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA N.A.,<br><br>          Defendant. | Case No. 23-cv-03709-AMO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

This is a putative class action involving allegations that Defendant Bank of America, N.A. ("the Bank") charges improper interest rates on consumer credit cards. The Bank's motion to dismiss was heard before this Court on February 22, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** the Bank's motion, for the following reasons.

I.    **BACKGROUND**

Plaintiff Austin Milliken brings this lawsuit against the Bank for imposing excessive interest charges on cardholders in violation of the Truth in Lending Act ("TILA"). Milliken asserts a claim under the TILA, as amended by the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act") and as implemented by Regulation Z, 12 C.F.R. Part 1026. He also brings a claim under the unlawful prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.

Milliken, a resident of Healdsburg, California, holds a variable-rate credit card issued by the Bank. Compl. ¶¶ 18, 42. The terms of the Bank's variable-rate cards are disclosed in a Credit

1   Card Agreement that consumers agree to when applying for a card.  Compl. ¶¶ 37-40.[1]  Under the

2   terms of that Agreement, interest rates for variable-rate cards are tied to – and will increase or

3   decrease along with – the U.S. Prime Rate, a publicly available benchmark interest rate.  *See* Wall

4   Street Journal, "Money Rates," available at https://www.wsj.com/market-ata/bonds/moneyrates

5   (publishing U.S. Prime Rate and explaining it "is the base rate on corporate loans posted by at

6   least 70% of the 10 largest U.S. banks").  Bank of America's credit card agreement provides the

7   following variable rate formula:

> Variable Rates are calculated by adding together an index and a margin.  This index is the highest U.S. Prime Rate as published in the "Money Rates" section of The Wall Street Journal on the last publication day of each month. . . .  An increase or decrease in the index will cause a corresponding increase or decrease in your variable rates on the first day of your billing cycle that begins in the same month in which the index is published.

12  Ex. A (ECF 19-1 at 3-4); *see also* Compl. ¶ 9.

13  Since March 2022, the Bank has adjusted the interest rate on his variable-rate credit card at

14  least 10 times.  Compl. ¶¶ 9, 42.  Milliken alleges that the Bank applied the new interest rate to

15  future amounts as well as to amounts plaintiff had charged earlier in the billing cycle in which the

16  interest rate adjusted.  *See, e.g.*, Compl. ¶ 38.  Milliken contends that the Bank's application of the

17  new Prime Rate to purchases made earlier in the applicable billing cycle, before the date of the

18  interest rate change, rendered the Bank's interest rate "proprietary" under the CARD Act rather

19  than "tied to" the U.S. Prime Rate and that, therefore, the retroactive application of the Prime Rate

20  to charges incurred before the index changed violated the CARD Act.  Compl. ¶ 41.  Milliken

21  claims that the improper rate increases caused him to incur excessive interest during the relevant

22  period.  Compl. ¶ 43.

---

[1] The Bank submitted an "Example of Credit Card Agreement for Bank of America Platinum Mastercard, World Mastercard, Platinum Visa, Visa Signature, and Visa Infinite Accounts" (June 30, 2023), available at https://www.bankofamerica.com/content/documents/creditcard/visa-mastercard-platinum-visasignature-world-infinite-en.pdf. ECF 19-1 (Exhibit A).  The Bank contends the Court may consider the Credit Card Agreement as incorporated by reference at this stage because plaintiff's complaint "necessarily relies" on the agreement.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); Compl. ¶¶ 37, 38, 40.  Plaintiff did not oppose the Court's consideration of the Credit Card Agreement.

## II. DISCUSSION

The Bank moves to dismiss the Complaint because its variable-interest practices fall within the CARD Act's exceptions, requiring dismissal of both the TILA and UCL causes of action.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679. If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

### B. TILA Claim

The Bank argues that Milliken's TILA claim fails because the interest rates it charged on variable-rate cards fell squarely within an exemption for variable-rate credit cards in TILA. The CARD Act includes a specific requirement that credit card issuers provide 45-days' notice before any increase in the annual percentage interest rate can be imposed on cardholders. 15 U.S.C. § 1637(i)(1). The CARD Act also generally prohibits retroactive interest rate increases to

3

outstanding or "protected" cardholder balances. 15 U.S.C. § 1666i-1(a). There exists a carveout, however, for variable interest rate credit cards. The CARD Act's prohibition on increasing interest on outstanding balances does not apply to "an increase in a variable annual percentage rate in accordance with a credit card agreement that provides for changes in the rate according to operation of an index that is not under the control of the creditor and is available to the general public." 15 U.S.C. § 1666i-1(b)(2) ("Exception (b)(2)").

Milliken argues that Bank of America's variable-rate formulation does not function "according to operation of an index" as is required by the carveout in Exception (b)(2). Milliken advances that, by applying the Prime Rate from the last day of the month to the entirety of charges since the beginning of the billing cycle, the applicable rate varies separately from the Prime Rate and is improperly retroactive in application.[2] And because the rate applied by the Bank incorporates these additional variables beyond the index, and applies them to existing balances, Milliken contends that the Bank utilizes a "proprietary" formula that does not qualify for Exception (b)(2).

The regulation implementing the variable-rate exception allows credit card issuers to increase a variable rate so long as "(i) The annual percentage rate varies according to an index that is not under the card issuer's control . . . ; and (ii) The increase in the annual percentage rate is due to an increase in the index." 12 C.F.R. § 1026.55(b)(2). Commentary to this regulation explains that for a rate increase to be considered "due to" an index increase, a card issuer may not "increase the rate by changing the method used to determine a rate that varies with an index (such as by increasing the margin)." 12 C.F.R. § Pt. 1026, Supp. I, Part 4 (Official Commentary to 12 C.F.R. § 1026.55(b)(2)). CFPB commentary to the regulation provides that an index would be considered improperly under the control of a card issuer in three circumstances: (1) "[t]he index is the card issuer's own prime rate or cost of funds"; (2) "[t]he variable rate is subject to a fixed minimum rate or similar requirement that does not permit the variable rate to decrease consistent with

---

[2] Milliken also contends that the Bank's formula is rendered even more attenuated from the Prime Rate because the Bank maintains discretion to set the billing cycles. However, Milliken does not allege that the Bank ever changed his billing cycles, and so the Court does not consider this argument as Milliken has not supported it with any factual allegations.

4

reductions in the index"; or (3) "[t]he variable rate can be calculated based on any index value during a period of time (such as the 90 days preceding the last day of a billing cycle)." *Id.*

The Court finds that the Bank's formula complies with a plain reading of the statute, the regulations, and the relevant guidance. The Bank's cardholder agreement "provides for changes in the annual percentage rate according to operation of an index that is not under the control of the creditor and is available to the general public." *See* Exception (b)(2). The variable rate charged to Milliken fluctuates monthly according to the Prime Rate. *See* Compl. ¶ 40 (quoting from the cardholder agreement, "An increase . . . in the index will cause a corresponding increase . . . in your variable rates on the first day of your billing cycle that begins in the same month in which the index is published."). Though Milliken argues at length that the term "according to" is a rigorous standard from which the Bank's practice deviates, he fails to show how the application of the Prime Rate on a given day of the month to the interest charged for the whole month means that the Bank's variable rate operates in a manner inconsistent with the Prime Rate. *See* Opp. at 11. The monthly variance shifts up or down along with the Prime Rate and thus falls within Exception (b)(2).

Further, the Bank's practice falls within the other boundaries of Exception (b)(2). The Prime Rate is a public index. Compl. ¶¶ 8-9. Milliken does not argue that the Bank controls the Prime Rate. Milliken does not argue that changes in the Prime Rate are unavailable to the general public, nor could he where the cardholder agreement expressly refers to the rate listed in The Wall Street Journal, a newspaper of broad publication. Ex. A at 2. As the Bank highlights, the Consumer Financial Protection Bureau's ("CFPB") official interpretation of Regulation Z, 12 C.F.R. § 1026.55(b)(2), uses the Prime Rate as published in the Wall Street Journal as an example of a permissible index for variable rates. CFPB, Official interpretation of 55(b)(2) Variable-rate exception (available at https://www.consumerfinance.gov/rules-policy/regulations/1026/55/#55-b-2-Interp-2-ii).[3] The Bank's application of a rate set as of the last index publication date in a given

---

[3] Though not pressed by the parties, the CFPB guidance additionally provides that "The variable rate can be calculated based on any index value during a period of time," including an average index value during the specified period or the index value on a specific day. *Id.*

1 month to the full billing cycle that overlaps with that publication date does not divorce the index
2 from the rate, and does not mean that the rate is moving on its own, untethered from the index.
3 The Bank's variable rates still vary "due to" fluctuations in the U.S. Prime Rate. The Credit Card
4 Agreement's terms are straightforward, and the practices as alleged are in accord with the
5 agreement's terms.

The Bank cites *Demry v. Citibank (S. Dakota), N.A.*, 2003 WL 179772 (S.D.N.Y. Jan. 24, 2003), aff'd, 81 F. App'x 368 (2d Cir. 2003). In that case, the plaintiffs claimed in relevant part that the issuer of their variable-rate card violated TILA by having variable periodic rates take effect on the first day of the next billing cycle, rather than immediately, which I find to closely resemble Milliken's argument here. The *Demry* court determined that the plaintiffs' TILA claim failed because the issuer had "disclosed to plaintiffs the manner in which their variable rate would be calculated . . . and plaintiffs had the option . . . to decline the terms of the card agreement by closing their account." *Id.* at *3. Though *Demry* was decided in 2003 and the CARD Act was not enacted until 2009, the reasoning remains persuasive. As in *Demry*, Milliken here cannot claim that the disclosure requirements presented in TILA have been violated where the interest rate calculations have functioned exactly as they were disclosed in the credit card agreement. Moreover, Milliken cannot claim that the variable interest rate has been inappropriately calculated because it is set to change on a regularly monthly schedule rather than with greater frequency. These are not the disclosure requirements of TILA or the CARD Act.

Milliken essentially complains that the Bank did exactly as the Credit Card Agreement said it would do: the rate increased or decreased with the U.S. Prime Rate (Compl. ¶¶ 9, 33-34); and rate changes went into effect on the first day of the billing cycle that started the same month as the index change (Compl. ¶¶ 11, 40, 43). Milliken concedes that the rate changes were "affected by" the U.S. Prime Rate, Compl. ¶ 9, and that the index was "include[d]" in the Bank's calculations, Compl. ¶ 33.

Exception (b)(2) for variable rate cards plainly applies. Milliken fails to state a claim for violation of the CARD Act and accordingly fails to state a claim for violation of the TILA.

1  Moreover, because Milliken's claim is facially implausible and fails as a matter of law, the Court
2  finds amendment futile and dismisses it with prejudice.

### C. UCL Claim

The "unlawful" prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (same).

Milliken rests his UCL claim on the Bank's alleged TILA violation. Compl. ¶ 67. Because the Court dismisses the TILA claim for the reasons stated above, there is no violation of law from which Milliken can borrow to the UCL makes independently actionable. The Court therefore dismisses the derivative UCL claim that relies on Milliken's pleading of a TILA violation.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Bank's motion to dismiss. Plaintiff acknowledged at the hearing that no additional facts could be alleged because the issue presented is one of statutory interpretation; therefore, amendment would prove futile. Therefore, the Court **DISMISSES** the case **with prejudice**.

**IT IS SO ORDERED.**

Dated: June 20, 2024

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**